**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 22-5058**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

THOMAS MASSIE et al.,

*Plaintiffs-Appellants*,

v.

NANCY PELOSI et al.,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court
for the District of Columbia
1:21-CV-02023
(Hon. Reggie B. Walton, United States District Judge)

———————————

### DEFENDANTS-APPELLEES' BRIEF

Douglas N. Letter
Todd B. Tatelman
Eric R. Columbus
Michelle S. Kallen
Stacie M. Fahsel

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House
Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants-Appellees*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Defendants-Appellees respectfully submit this certificate as to parties, rulings, and related cases.

### A. Parties and Amici

Plaintiffs-Appellants are Thomas Massie, Marjorie Taylor Greene, and Ralph Norman.

Defendants-Appellees are Nancy Pelosi, William J. Walker, and Catherine Szpindor, all in their official capacities.

No amici or intervenors have appeared in this Court to date.

### B. Rulings Under Review

The rulings under review are the District Court's Order (ECF No. 48), and Memorandum Opinion (ECF No. 47), in *Massie v. Pelosi*, No. 21-2023, 2022 WL 703942 (D.D.C. Mar. 9, 2022) (Walton, J.).   The order granted Defendants-Appellees' motion to dismiss.

### C. Related Cases

The case on review has not previously been before this Court.  Defendants-Appellees are aware of a related case pending in the U.S. District Court for the District of Columbia, *Clyde et al. v. Walker et al.*, No. 21-CV-01605, (D.D.C. filed June 13, 2021) involving some of the same defendants and some of the same legal issues.

# TABLE OF CONTENTS

**Page**

GLOSSARY ....................................................................................................1

INTRODUCTION ...........................................................................................2

STATEMENT OF JURISDICTION.................................................................5

STATEMENT OF THE ISSUES......................................................................5

STATEMENT OF THE CASE..........................................................................5

    A.    THE HOUSE'S CONSTITUTIONAL AUTHORITY TO GOVERN ITSELF ............................................................................5

    B.    COVID-19 AND HOUSE RESOLUTION 38...............................6

    C.    MEMBER COMPENSATION ......................................................12

    D.    PROCEDURAL HISTORY ...........................................................13

SUMMARY OF THE ARGUMENT ..............................................................15

    I.    THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFFS' SUIT ...........................................................................................15

    II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM ...................16

STANDARD OF REVIEW ............................................................................17

ARGUMENT .................................................................................................18

    I.    THE DISTRICT COURT CORRECTLY HELD THAT THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFFS' SUIT.......18

    II.    PLAINTIFFS FAIL TO STATE A CLAIM ....................................29

        A.    The Resolution Does Not Violate the Twenty-Seventh Amendment ...........................................................................30

        B.    The Resolution Does Not Violate Section 6 or 7 of Article I of the Constitution .......................................................41

        C.    The Resolution Does Not Violate the Discipline Clause.........41

        D.    The Resolution Does Not Violate the First Amendment.........45

CONCLUSION ..............................................................................................54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES†

**Cases**                                                                 **Page(s)**

*Barker v. Conroy*,
    921 F.3d 1118 (D.C. Cir. 2019) ................................................................ 23, 24

*Boehner v. Anderson*,
    30 F.2d 156 (D.C. Cir. 1994) ........................................................ 28, 36, 37, 38

*Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*,
    515 F.2d 1341 (D.C. Cir. 1975) ............................................ 15, 21, 23, 25, 27

*Cressman v. Thompson*,
    719 F.3d 1139 (10th Cir. 2013) ................................................................ 50, 51

*Dallas v. Stanglin*,
    490 U.S. 19 (1989) ............................................................................................ 52

*Doe v. McMillan*,
    412 U.S. 306 (1973) .......................................................................................... 18

*Dombrowski v. Eastland*,
    387 U.S. 82 (1967) ............................................................................................ 26

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975) ............................................................................ 18, 19, 29

*Fields v. Off. of Eddie Bernice Johnson*,
    459 F.3d 1 (D.C. Cir. 2006) ............................................................................ 26

*Gravel v. United States*,
    408 U.S. 606 (1972) ................................................. 14, 15, 19, 20, 21, 22, 26, 28

*Humphrey v. Baker*,
    848 F.2d 211 (D.C. Cir. 1988) ................................................................ 34, 37

*In re Chapman*,
    166 U.S. 661 (1897) .......................................................................................... 44

---

† Authorities upon which we chiefly rely are marked with asterisks.

*In re Grand Jury Subpoenas*,
    571 F.3d 1200 (D.C. Cir. 2009)....................................................42

*Kennedy v. Sampson*,
    511 F.2d 430 (D.C. Cir. 1974).....................................................28

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880)..........................................................26, 35, 42

*McCarthy v. Pelosi*,
    5 F.4th 34 (D.C. Cir. 2021)................................ 13, 16, 18, 19, 20, 21, 22, 23, 26

*Moore v. U.S. House of Reps.*,
    733 F.2d 946 (D.C. Cir. 1984).....................................................28

*Patchak v. Jewell*,
    828 F.3d 995 (D.C. Cir. 2016).....................................................18

*Powell v. McCormack*,
    395 U.S. 486 (1969)................................................................26

*Rangel v. Boehner*,
    785 F.3d 19 (D.C. Cir. 2015)........................ 17, 18, 19, 22, 28, 29, 45
    20 F. Supp. 3d 148 (D.D.C. 2013)...............................................45

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc. ("FAIR")*,
    547 U.S. 47 (2006)..............................................................51, 52

*Texas v. Johnson*,
    491 U.S. 397 (1989)................................................................47

*United States v. Ballin*,
    144 U.S. 1 (1892)..............................................................5, 6, 27

*United States v. Brewster*,
    408 U.S. 501 (1972)................................................................44

*United States v. Hatter*,
    532 U.S. 557 (2001)..........................................................32, 33

*United States v. O'Brien*,
    391 U.S. 367 (1968)........................................................15, 17, 47, 51

*United States v. Rostenkowski*,
    59 F.3d 1291 (D.C. Cir. 1995) ........................................................28

*Vander Jagt v. O'Neill*,
    699 F.2d 1166 (D.C. Cir. 1983) .....................................................28

*Walker v. Jones*,
    733 F.2d 923 (D.C. Cir. 1984) .........................................23, 26, 27

*W. Va. Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ........................................................................51

*Yellin v. United States*,
    374 U.S. 109 (1963) ........................................................................28

## Constitutional & Statutory Provisions

U.S. Const., Amend. XXVII ................................................................30

U.S. Const., Art. I, § 5, cl. 2 ...........................................6, 34-35, 42

U.S. Const., Art. I, § 6, cl. 1 ..............................................18, 30, 34

U.S. Const., Art. I, § 7, cl. 2 ............................................................34

U.S. Const., Art. III, § 1 ..................................................................32

2 U.S.C. § 4501 ................................................................................12

2 U.S.C. § 4523 ................................................................................32

2 U.S.C. § 5301 ................................................................................13

## Legislative Authorities

163 Cong. Rec. H7 (daily ed. Jan. 3, 2017) ....................................40

163 Cong. Rec. H26 (daily ed. Jan. 3, 2017) ..................................40

166 Cong. Rec. H3965 (daily ed. July 29, 2020) ..............................9

166 Cong. Rec. H5875 (daily ed. Nov. 18, 2020) .............................9

166 Cong. Rec. H7158 (daily ed. Dec. 15, 2020) .............................9

167 Cong. Rec. H19 (daily ed. Jan. 4, 2021) ............................................9

167 Cong. Rec. H40-41 (daily ed. Jan. 4, 2021) ......................................9

167 Cong. Rec. H2157 (daily ed. May 11, 2021) ...................................10

167 Cong. Rec. H274 (daily ed. Feb. 2, 2021) ........................................9

168 Cong. Rec. H1151 (daily ed. Feb. 28, 2022) ..................................12

H. Rep. No. 116-465 (2020) ...................................................................44

H. Res. 5, 115th Cong. (2017) ...............................................................40

H. Res. 8, 117th Cong. (2021) ...............................................................10

H. Res. 38, 117th Cong. (2021) ..................................................9, 10, 32

H. Res. 965, 116th Cong. (2020) ...........................................................10

Rule II, Rules of the U.S. House of Representatives, 117th Cong. (2021) .............10

**Other Authorities**

A Dictionary of the English Language, Samuel Johnson (1785) ............... 31-32, 43

American Dictionary of the English Language, Noah Webster (1828)
    https://perma.cc/JB5C-KWLY ..........................................................43

Black's Law Dictionary
    (11th ed. 2019) ................................................................................31
    (6th ed. 1991) .................................................................................43

Ctrs. for Disease Control & Prevention (CDC), *COVID Data Tracker*
    (updated July 14, 2022), https://perma.cc/SE47-3JXX .......................6

CDC, *How COVID-19 Spreads* (updated July 14, 2021),
     https://perma.cc/7CQR-LT4U ...........................................................7

CDC, *When You've Been Fully Vaccinated* (updated Aug. 19, 2021),
     https://perma.cc/T82R-TQGY ...........................................................7

CDC, *Your Guide to Masks* (updated Aug. 13, 2021),

https://perma.cc/M7AT-EYF8 ..........................................................................7

Chris Marquette, *Capitol Police officer dies of complications from COVID-19*,
Roll Call (Jan. 13, 2022),
https://perma.cc/4YTP-C2VF ...................................................................6

Chris Marquette, *Front-line Workers in Capitol keep getting COVID-19*,
Roll Call (Nov. 19, 2020),
https://perma.cc/2M2W-JREZ ..................................................................6

Cong. Rsch. Serv., 97-1011, Salaries of Members of Congress: Recent Actions and
Historical Tables 2 (2021) ........................................................12, 13

Cong. Rsch. Serv., RL31382, Expulsion, Censure, Reprimand, and Historical
Fine: Legislative Discipline in the House of Representatives 14 (2016) ..........43

Dennis Romboy, *What's on a Mask?  Politicians Send Messages with Face
Coverings*, Deseret News (Mar. 10, 2021),
https://perma.cc/BJ7W-UCFA ................................................................49

GianCarlo Canaparo & Paul J. Larkin, Jr., *The Twenty-Seventh Amendment:
Meaning and Application*, Harv. J.L. & Pub. Pol'y, Sept. 2, 2021 ...................37

*In Re: Reinstatement of Mask Requirement for All Individuals in Public and Non-
Public Areas of Courthouse*,
No. 21-45 (July 30, 2021) ......................................................................46

James Madison, Speech in the House of Representatives (June 8, 1789),
in The Congressional Register, June 8, 1789 ......................................38

Josh Chafetz, Democracy's Privileged Few 74 (2007) .........................................42

2 Joseph Story, *Commentaries on the Constitution of the United States* § 835
(1833) ........................................................................................44

Letter from Theodore E. Deutch & Jackie Walorski to Nancy Pelosi
(July 20, 2021), https://perma.cc/L4R5-5UHF..............................................11
(July 20, 2021), https://perma.cc/U4QC-KHFA ..........................................11

Memorandum from Brian P. Monahan, *Attending Physician Pandemic Social
Distancing and Daily Health Screening Implementation Guidelines for*

*Congressional Offices and Work Centers VERSION 2.0*
(June 16, 2020), https://perma.cc/PFB5-5AAF .................................8

Memorandum from Paul D. Irving & Brian P. Monahan, *Use of Face Covers in the House Office Buildings*
(July 29, 2020), https://perma.cc/2QYR-EYAD ...............................9

Memorandum from Paul D. Irving, *Coronavirus (COVID-19) Guidance for House Offices*
(Feb. 28, 2020), https://perma.cc/6EFQ-42B2 ..................................7

Memorandum from Philip G. Kiko & Paul D. Irving, *Availability of Hand Sanitizer and Face Coverings for Member and Committee Offices*
(Apr. 21, 2020), https://perma.cc/Y5NT-AURR ...............................8

Oxford English Dictionary (2d ed. 1989) ...............................................31

Paulina Firozi & David Weigel, *Rep. Ron Wright has died after battle with covid-19*, Wash. Post (Feb. 8, 2021), https://perma.cc/U23B-M3MP .........................6

Press Releases, Committee on Ethics,
https://perma.cc/TL62-KDH9.................................................................40

Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497 (1992).....................................30

Tal Axelrod, *Staffer for Florida congressman dies from COVID-19*, The Hill
(July 25, 2020), https://perma.cc/PK7E-38K5 ...................................6

2 The Records of the Federal Convention of 1787
(Max Farrand ed., 1911) ...................................................................31

Thomas Massie (@RepThomasMassie), Twitter
(Jan. 31, 2021, 8:33 PM), https://perma.cc/QWA4-D69P ................49
(Apr. 20, 2021, 4:32 PM), https://perma.cc/KNV8-VETW ..............49

Tim Elfrink, Luke Letlow, *GOP congressman-elect from Louisiana, dies of covid-19*, Wash. Post (Dec. 30, 2020), https://perma.cc/R6ZW-4XMK.......................6

# GLOSSARY

CDC                        Centers for Disease Control

JA                         Joint Appendix

## INTRODUCTION

The novel coronavirus known as COVID-19 upended most aspects of American life and has caused over one million deaths in the United States alone; it has also sickened many millions of Americans and required a massive number of hospitalizations.  Countless institutions were forced to take dramatic measures to ensure continuity of operations while protecting the health of their employees and patrons.

The House of Representatives and its Members and their staffs have not been immune to this public health catastrophe: a Member and a Member-elect, and at least one staffer, have died from this airborne virus, as has a U.S. Capitol Police officer.

As part of the House's efforts to protect the health of its Members and staff, and to ensure that the House will continue to be able to operate effectively in the midst of the pandemic, the Speaker of the House announced in July 2020, that Members would be required to wear masks while in the Hall of the House (sometimes referred to as the House Chamber), which is the sole room in which the House debates and votes as a full body.  In January 2021, at a time when COVID-19 was killing over 3,000 Americans per day, the House adopted a Resolution authorizing the imposition of fines against House Members who refuse to wear a

mask in the Hall of the House.  As of the end of February 2022, Members are no longer required to wear a mask in the Hall of the House.

As we demonstrate in this brief, adoption of this Resolution lies squarely within the House's broad constitutional authority to make its own rules of proceeding and to discipline Members who violate those rules.  Nonetheless, the three Plaintiff House Members—Representatives Thomas Massie, Marjorie Taylor Greene, and Ralph Norman—ask this Court to declare the implementation of the Resolution unconstitutional and to enjoin the House Sergeant at Arms and House Chief Administrative Officer from enforcing it.  As the district court correctly did, this Court should reject those extraordinary requests and affirm dismissal of the complaint.

First and foremost, the district court properly dismissed the complaint for lack of subject matter jurisdiction.  Plaintiffs' suit is barred by the Constitution's Speech or Debate Clause, which provides absolute immunity from suit to Members, Officers, and Congressional aides for any legislative acts. As the district court found, there can be no doubt that the challenged acts, all of which involve enforcement of a Resolution adopted pursuant to the House's constitutional powers to govern its own Chamber proceedings and to discipline its own Members, are legislative acts absolutely protected by the Clause. This is particularly true here,

3

where the Resolution at issue is designed to protect the health of Members and staff in the one place where all full House debates and votes take place.

In addition, and alternatively, the dismissal of Plaintiffs' complaint must be affirmed because Plaintiffs fail to state a claim on which relief can be granted. The complaint alleges that the challenged actions by the House Defendants violate the Twenty-Seventh Amendment (Count I); Article I, Section 5, Clause 2 (Count II); Article I, Section 6, Clause 1 and Article I, Section 7, Clause 2 (Count III); and the First Amendment (Count IV). As the district court found, all of those claims fail as a matter of law. The Twenty-Seventh Amendment, by its plain terms and consistent with its history and purpose, does not apply here; Article I, Section 5, Clause 2 (the Discipline Clause) gives the House broad powers to punish its Members for violating internal House rules; Article I, Section 6, Clause 1 (the Ascertainment Clause) and Article I, Section 7, Clause 2 (the Presentment Clause) impose requirements not implicated here because Plaintiffs' "compensation for their services" has not been affected; and the First Amendment is not violated because the Resolution does not restrict or compel Plaintiffs' speech.

Because the suit is barred by the Speech or Debate Clause, and because in any event the complaint fails to state a claim, the judgment of the district court dismissing Plaintiffs' complaint must be affirmed.

4

## STATEMENT OF JURISDICTION

Plaintiffs' statement of jurisdiction is correct.

## STATEMENT OF THE ISSUES

1.  Whether the Speech or Debate Clause bars Plaintiffs' suit challenging Defendants' administration of a House Resolution that imposed fines for Members who did not wear a mask in the Hall of the House.

2.  Whether such Resolution violated the Twenty-Seventh Amendment.

3.  Whether such Resolution violated the Discipline Clause.

4.  Whether such Resolution violated the Ascertainment or Presentment Clauses.

5.  Whether such Resolution violated the First Amendment.

## STATEMENT OF THE CASE

### A.    The House's Constitutional Authority to Govern Itself

Article I of the Constitution vests all federal "legislative Powers … in a Congress of the United States, which shall consist of a Senate and House of Representatives."  Art. I, § 1.  Those powers are "not vested in any one individual, but in the aggregate of the members who compose the body, and its action is not the action of any separate member or number of members, but the action of the body as a whole."  *United States v. Ballin*, 144 U.S. 1, 7 (1892).

The Constitution grants the House and Senate each wide discretion to effectuate those provisions and to govern themselves.  The Rulemaking Clause

empowers each body to "determine the Rules of its Proceedings," and the Discipline Clause authorizes each chamber to enforce those rules by "punish[ing] its Members for disorderly Behaviour." U.S. Const., Art. I, § 5, cl. 2. Absent a conflict with an express constitutional requirement or a violation of "fundamental rights," the rulemaking power of each house is plenary and beyond judicial review. *Ballin*, 144 U.S. at 5.

### B.     COVID-19 and House Resolution 38

1. The novel coronavirus discovered in late 2019, commonly known as COVID-19, has killed over one million Americans.[1] The death toll includes a House Member and a Member-elect: Representative Ron Wright and Representative-elect Luke Letlow.[2] In addition, numerous Congressional staff and U.S. Capitol Police officers have been sickened by the virus; at least one staffer and one officer have died.[3]

---

[1] Ctrs. for Disease Control & Prevention (CDC), *COVID Data Tracker* (updated July 14, 2022), https://perma.cc/SE47-3JXX.

[2] Paulina Firozi & David Weigel, *Rep. Ron Wright has died after battle with covid-19*, Wash. Post (Feb. 8, 2021), https://perma.cc/U23B-M3MP; Tim Elfrink, *Luke Letlow, GOP congressman-elect from Louisiana, dies of covid-19*, Wash. Post (Dec. 30, 2020), https://perma.cc/R6ZW-4XMK.

[3] *See, e.g.*, Tal Axelrod, *Staffer for Florida congressman dies from COVID-19*, The Hill (July 25, 2020), https://perma.cc/PK7E-38K5; Chris Marquette, *Front-line Workers in Capitol keep getting COVID-19*, Roll Call (Nov. 19, 2020), https://perma.cc/2M2W-JREZ; Chris Marquette, *Capitol Police officer dies of complications from COVID-19,* Roll Call (Jan. 13, 2022), *available at* https://perma.cc/4YTP-C2VF.

2.  COVID-19 spreads "when an infected person breathes out droplets and very small particles that contain the virus."[4]  Such droplets and particles "can be breathed in by other people or land on their eyes, noses, or mouth."[5]  Accordingly, at various points during the pandemic the CDC has recommended that Americans cover their face with a mask in order to reduce the chance of transmitting or contracting the COVID-19 virus.  As of summer 2021, the CDC recommended that all persons aged two and older who are not fully vaccinated wear masks in indoor public places, and that persons who are fully vaccinated wear a mask in indoor public places in areas of substantial or high transmission.[6]

3.  Throughout the pandemic, the Attending Physician of the United States Congress (Dr. Brian P. Monahan) has provided guidance on a wide range of issues relating to the protection of Members and staff health.  On February 28, 2020, the Sergeant at Arms informed Members and staff that the Attending Physician recommended that any person showing symptoms of COVID-19 wear a mask.[7]  A few months later, in light of new CDC guidance, the Attending Physician

---

[4] CDC, *How COVID-19 Spreads* (updated July 14, 2021), https://perma.cc/7CQR-LT4U.

[5] Id.

[6] CDC, *Your Guide to Masks* (updated Aug. 13, 2021), https://perma.cc/M7AT-EYF8; CDC, *When You've Been Fully Vaccinated* (updated Aug. 19, 2021), https://perma.cc/T82R-TQGY.

[7] Memorandum from Paul D. Irving, *Coronavirus (COVID-19) Guidance for House Offices* at 2 (Feb. 28, 2020), https://perma.cc/6EFQ-42B2.

recommended that all Members and staff wear a face covering whenever it may not be possible to maintain six feet of physical separation.[8]

4. On June 16, 2020, the Attending Physician issued to Members and staff a detailed guidance memorandum that included, among much else, requirements and recommendations for face coverings. In his memorandum, he required the use of face coverings for any meetings in a "limited enclosed space, such as a committee hearing room" for greater than 15 minutes. He also required that persons not wearing a face covering be denied entry absent a valid medical waiver signed by the Office of the Attending Physician. In addition, he strongly recommended face coverings for any interactions longer than 15 minutes in any enclosed Congressional building public space.[9]

5. Shortly thereafter, the Speaker of the House, Nancy Pelosi, announced that all Members and staff would be required to wear masks in the Hall of the House, except temporarily when recognized by the Chair to speak, and that masks

---

[8] Memorandum from Philip G. Kiko & Paul D. Irving, *Availability of Hand Sanitizer and Face Coverings for Member and Committee Offices* (Apr. 21, 2020), https://perma.cc/Y5NT-AURR.

[9] Memorandum from Brian P. Monahan, *Attending Physician Pandemic Social Distancing and Daily Health Screening Implementation Guidelines for Congressional Offices and Work Centers VERSION 2.0* §§ 3.2, 3.2.1, 3.2.2 (June 16, 2020), https://perma.cc/PFB5-5AAF. The memorandum noted that Congress has "unique risks" in that it is "an intra-National assembly of individuals traveling from areas of variable disease activity to assemble in Washington DC. As such, Congress may experience not only the local District of Columbia circumstance, but also that of areas with higher risk." *Id.* § 3.1.8.

would be made available at entry points for any Member who forgets to bring one. 166 Cong. Rec. H3965 (daily ed. July 29, 2020).[10]  The same day, the Sergeant at Arms and the Attending Physician announced that, with limited exceptions, this requirement would also apply in House office buildings, "[u]pon the direction of the Speaker of the House in consultation with our respective offices."[11]

6.  On December 15, 2020, the Speaker announced that "masks will now be required at all times in the Hall of the House without exception, including while Members are under recognition."  166 Cong. Rec. H7158 (daily ed. Dec. 15, 2020).  The Speaker reiterated this policy on January 4, 2021.  *See* 167 Cong. Rec. H19, H40-41 (daily ed. Jan. 4, 2021).

7.  On January 12, 2021, House Resolution 38 was introduced and adopted by the full House the same day.  *See* H. Res. 38, 117th Cong. (2021); 167 Cong. Rec. H274-75 (daily ed. Feb. 2, 2021).  This Resolution provided that "the Sergeant-at-Arms is authorized and directed to impose a fine against a Member,

---

[10] The Speaker announced that the requirement would apply "during the pendency of a covered period pursuant to House Resolution 965," which referred to a period designated by the Speaker or her designee during which Members may vote remotely by proxy because "a public health emergency due to a novel coronavirus is in effect."  H. Res. 965, 116th Cong. § 1(a) (2020).  The Speaker reiterated this policy on November 18, 2020.  166 Cong. Rec. H5875 (daily ed. Nov. 18, 2020).

[11] Memorandum from Paul D. Irving & Brian P. Monahan, *Use of Face Covers in the House Office Buildings* (July 29, 2020), https://perma.cc/2QYR-EYAD.

Delegate, or the Resident Commissioner for the failure to wear a mask in contravention of the Speaker's announced policies of January 4, 2021." H. Res. 38 § 4(a)(1). The Resolution imposed a $500 fine for a first offense and a $2,500 fine for any subsequent offense. *Id.* § 4(a)(2) (incorporating by reference House Rule II.3(g)). The fined Member could appeal to the House Committee on Ethics, which by majority vote could overturn the fine. *Id.* If the fine was not overturned on appeal, "the [House] Chief Administrative Officer shall deduct the amount of any fine … from the net salary otherwise due the Member, Delegate, or the Resident Commissioner." House Rule II.4(d)(1), Rules of the U.S. House of Representatives, 117th Cong. (2021) ("House Rules") (incorporated by reference in H. Res. 38 § 4(a)(2)).[12]

8. On May 11, 2021, the Speaker announced that

> Consistent with updated guidance from the Office of Attending Physician, the Chair wishes to inform Members that while masks continue to be required in the Hall of the House, Members are permitted to remove their masks temporarily while under recognition. To be clear, Members and staff must wear masks in the Hall of the House at all times except that a Member may remove their mask when recognized by the Chair. In addition, Members presiding as Chair may remove their masks when speaking.

167 Cong. Rec. H2157 (daily ed. May 11, 2021).

---

[12] House Resolution 38 applies during a period in which members may vote by proxy due to the fact that "a public health emergency due to a novel coronavirus is in effect." H. Res. 965 § 1(a); *see* H. Res. 8, 117th Cong. § 3(s) (2021) (incorporated by reference in H. Res. 38 § 4(a)).

9. On May 18 and 19, 2021, each Plaintiff Member deliberately entered the Hall of the House without wearing a mask. JA021-22. Following each occasion, the House Sergeant at Arms notified the respective Member that he or she would be fined for violating House Resolution 38. JA023, 041. The Plaintiff Members appealed each violation to the House Ethics Committee. A majority of the House Ethics Committee did not agree to the appeals, and thus, the appeals were denied.[13] Plaintiffs received notification from the Office of the Chief Administrative Officer that the amount of their fines would be deducted from their net salary deposit. JA028, 038.

10. On February 28, 2022, the Speaker of the House pro tempore announced the following:

> Consistent with updated guidance from the Attending Physician, the Chair wishes to inform Members that masks are no longer required in the Hall of the House. The Chair would further note that all Members and staff may continue to wear masks at their discretion. This announcement is incorporated within the policy on conduct during a covered period of January 4, 2021, and supersedes all other announced policies that are in conflict.

---

[13] JA043 (Rep. Massie); Letter from Theodore E. Deutch & Jackie Walorski to Nancy Pelosi (July 20, 2021) (Rep. Greene), https://perma.cc/L4R5-5UHF; Letter from Theodore E. Deutch & Jackie Walorski to Nancy Pelosi (July 20, 2021) (Rep. Norman), https://perma.cc/U4QC-KHFA.

168 Cong. Rec. H1151 (daily ed. Feb. 28, 2022). This announcement did not affect fines previously assessed to any Members for violations of the mask policy then in effect.

### C. Member Compensation

Article I, Section 6, of the Constitution provides that "Compensation" for Members of Congress must be "ascertained by Law, and paid out of the Treasury of the United States." Art. I, § 6, cl. 1. Before the early 1990s, Congress periodically enacted legislation to alter its compensation. *See* Cong. Rsch. Serv., 97-1011, Salaries of Members of Congress: Recent Actions and Historical Tables 2 (2021) (hereinafter CRS Report 97-1011).

More recently, compensation has been determined pursuant to a statutory formula for automatic adjustments. *See id.* The Ethics Reform Act of 1989, 2 U.S.C. § 4501, establishes the current annual adjustment formula, which is based on changes in private sector wages as determined by a specified index. *See* CRS Report 97-1011 at 2. The adjustment is automatic unless it is denied by legislation, although the percentage may not exceed the percentage base pay increase for certain other federal employees. *See id.* Beginning with an adjustment in 1991, annual adjustments were accepted by Congress thirteen times, with the most recent adjustment in 2009. *See id.* Since 2009, pay adjustments have been denied by legislation every year. *See id.*

Since 1983, Member salaries have been funded in a permanent appropriations account. *See id.* at 1. House Members are paid on a monthly basis. *See* 2 U.S.C. § 5301. Members' monthly paychecks reflect numerous voluntary and required deductions from their salary, including deductions for federal retirement benefits, Thrift Savings Plan contributions, health and life insurance contributions, federal and state taxes, and Social Security.

## D.    Procedural History

Plaintiffs filed their complaint against Speaker Pelosi, House Sergeant at Arms William Walker, and House Chief Administrative Officer Catherine Szpindor. JA015-16. The complaint alleges that, by enforcing House Resolution 38, these House officials were violating Article I, Sections 5, 6, and 7, and the First and Twenty-Seventh Amendments of the Constitution. JA029-34. Plaintiffs sought both declaratory and injunctive relief. JA035.

The district court granted Plaintiffs' motion to dismiss, holding that the Speech or Debate Clause precludes Plaintiffs' suit. The court determined that Defendants' challenged actions were "quintessentially legislative acts falling squarely within the [Speech or Debate] Clause's ambit," JA139 (quoting *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 897 (2022)), because "they regulate Members' conduct in the House Chamber as Members participate in the 'consideration and passage or rejection of proposed

13

legislation[,]' and "they fall within the House's authority to enact rules regarding its legislative process and to discipline Members for non-compliance, which are 'matters which the Constitution places within the jurisdiction of [the] House.'" *Id.* (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)).

The district court concluded that, "by delegating authority to the Speaker to preserve order and decorum, and passing House Resolution 38 to compel Members to abide by the House's mask policy, the House is regulating the very atmosphere in which lawmaking deliberations occur." JA150 (citations and internal quotation marks omitted). The court further concluded that "the defendants' actions also constitute 'other matters which the Constitution places within the jurisdiction of either House[,]' *Gravel*, 408 U.S. at 625, because the House's authority to establish the rules of the House and to discipline Members for non-compliance with those rules, including through the actions challenged in this case, stems from the Constitution itself." JA151.

The court decided, though, that to resolve whether Defendants' actions were "within the scope of the Speech or Debate Clause," the court needed to determine whether "the House's mask policy and House Resolution 38 violate other constitutional provisions." JA153 n.14.

First, the court rejected Plaintiffs' argument that the fines violated the Twenty-Seventh Amendment. The court determined that the term "compensation"

as used in that Amendment refers to a Member's salary, and that because a fine does not reduce such salary, the Amendment was not violated. JA153-60.

Second, the court rejected Plaintiffs' claim that the fines violated the Ascertainment and Presentment Clauses for the same reason: the fines do not reduce a Member's "compensation." JA160-61.

Third, applying the factors in *United States v. O'Brien*, 391 U.S. 367 (1968), the court rejected Plaintiffs' argument that the fines violated the First Amendment's protections for symbolic speech. JA161-71. The court also denied Plaintiffs' arguments that the mask requirement constituted compelled speech, JA161 n.20, and viewpoint discrimination, JA163 n.21.

## SUMMARY OF THE ARGUMENT

### I. THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFFS' SUIT

The Speech or Debate Clause is absolute and immunizes Members and their aides for all "legislative acts" that are "an integral part of the deliberative and communicative processes by which Members participate in … House proceedings" with respect to either "consideration and passage or rejection of proposed legislation" or "other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. Defendants' administration of House Resolution 38 falls into this category.

Applying these principles, this Court in *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1351 (D.C. Cir. 1975), held that

15

the implementation of Congressional rules governing access to Congress's press galleries is a legislative act entitled to Speech or Debate immunity.  Since then, this Court has consistently reaffirmed *Consumers Union*, and Plaintiffs' efforts to distinguish it are unconvincing.

Because Speech or Debate Clause immunity is absolute, no consideration of the merits of Plaintiffs' constitutional claims is necessary in order to affirm that district court's judgment of dismissal.  This Court has made this point clear in various rulings, holding that claims that the House or Senate has acted unconstitutionally or in violation of their rules are common, but irrelevant.  The Court confirmed this rule of law recently in *McCarthy*, 5 F.4th at 39-40.

## II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM

In any event, if this Court chooses to reach the merits, as the district court did, the judgment of dismissal still must be affirmed because Plaintiffs have failed to state a valid claim as a matter of law.

*First*, Plaintiffs' Twenty-Seventh Amendment argument is incorrect. Plaintiffs' attempt to make a Resolution authorizing the imposition of a fine for violating House rules into a "law varying the compensation for the services of … Representatives" founders for multiple reasons: a fine does not affect the "compensation for the services" of a Member, and the Resolution is not a "law" for

16

purposes of the Twenty-Seventh Amendment. Furthermore, the history and purpose of that Amendment make clear that a fine is not within its scope.

*Second*, the Resolution does not violate the Discipline Clause, which provides broad and nearly unreviewable authority for each House to discipline its members—including by fines.

*Third*, the Resolution does not violate the Ascertainment or Presentment Clauses, largely because, as noted above, a fine does not affect "compensation."

*Finally*, the Resolution does not violate the First Amendment. Plaintiffs' claim that the Resolution impermissibly restricts symbolic speech is incorrect. The Resolution amply passes the symbolic speech test of *United States v. O'Brien*: the Resolution advances a substantial governmental interest unrelated to freedom of expression, and any "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377. Plaintiffs' ill-formed compelled-speech and viewpoint discrimination claims also fail any applicable test.

## STANDARD OF REVIEW

This Court reviews the district court's dismissal based on Speech or Debate immunity *de novo*, and may affirm the dismissal on Speech or Debate grounds alone. *See Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015). If the Court addresses the constitutional merits, its review would likewise be *de novo*. *See*

*Patchak v. Jewell*, 828 F.3d 995, 1001 (D.C. Cir. 2016).

## ARGUMENT

## I.     THE DISTRICT COURT CORRECTLY HELD THAT THE SPEECH OR DEBATE CLAUSE BARS PLAINTIFFS' SUIT

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const., Art. I, § 6, cl. 1. The "central object" of the Clause is to protect the "independence and integrity of the legislature." *McCarthy*, 5 F.4th at 38 (citation omitted). The Clause also prevents litigation distractions that may "disrupt the legislative function." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975).

The continuation of this litigation—which seeks to prevent the discipline of House Members pursuant to an internal rule designed to protect the health of persons in the Hall of the House, where all House-wide debate and voting on legislation occurs—would risk compromising the independence of the legislature and creating the distractions that the Clause was designed to prevent.

The Supreme Court has "consistently read the Speech or Debate Clause 'broadly' to achieve its purposes." *Rangel*, 785 F.3d at 23 (quoting *Eastland*, 421 U.S. at 501). It is thus "long settled" that the Clause's protections apply "not just to speech and debate in the literal sense, but to all 'legislative acts.'" *McCarthy*, 5 F.4th at 38-39 (quoting *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973)).

18

Legislative acts are those that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel*, 408 U.S. at 625.  Such acts "include both (i) matters pertaining 'to the consideration and passage or rejection of proposed legislation,' and (ii) 'other matters which the Constitution places within the jurisdiction of either House.'"  *McCarthy*, 5 F.4th at 40 (quoting *Gravel*, 408 U.S. at 625).  Where it applies, the Clause is an "absolute bar" to suit, including when a legislative act is alleged to be in violation of the Constitution.  *Eastland*, 421 U.S. at 503, 509-10; *McCarthy*, 5 F.4th at 38.

Further, it is "well established that the Clause's protections extend to Congressional aides and staff."  *McCarthy*, 5 F.4th at 39; *see Rangel*, 785 F.3d at 25.  Specifically, the Clause "applies to aides and staff 'insofar as their conduct … would be a protected legislative act if performed by a Member.'"  *McCarthy*, 5 F.4th at 38 (quoting *Gravel*, 408 U.S. at 618 (alterations omitted)).  The "key consideration, Supreme Court decisions teach, is the act presented for examination, not the actor."  *McCarthy*, 5 F.4th at 39 (citation omitted).

The Speech or Debate Clause bars Plaintiffs' suit because the challenged acts here are undeniably legislative.  As noted earlier, the Rulemaking Clause of the Constitution provides that the House may "determine the Rules of its Proceedings," and the Discipline Clause provides that the House may "punish its

19

Members for disorderly Behaviour." Art. I, § 5, cl. 2. The Constitution thus specifically grants to Congress the authority to adopt its own rules and to discipline its Members. Accordingly, the House's adoption of House Resolution 38, and the enforcement and administration of that rule, are all legislative acts that are an "integral part" of a "matter[] which the Constitution places within the jurisdiction of [the] House." *Gravel*, 408 U.S. at 625.

Plaintiffs cannot circumvent the Speech or Debate Clause by suing the Sergeant at Arms and the Chief Administrative Officer for their execution of House Resolution 38. In *McCarthy v. Pelosi*, this Court held that the plaintiffs' lawsuit challenging the proxy voting rules was barred by the Speech or Debate Clause. 5 F.4th at 41. In so holding, the court rejected the plaintiffs' argument that "the acts of voting on and adopting the Resolution lie within the Clause's zone of immunity, but acts undertaken in implementing the Resolution do not." *Id.* at 40. As this Court instructed, "[t]he salient distinction under the Speech or Debate Clause is not between enacting legislation and executing it"; it "instead is between legislative acts and non-legislative acts." *Id.* at 41. The Court noted that in *Consumers Union* it dismissed the suit against the Sergeants at Arms of both houses of Congress because the Clause "encompassed not just the promulgation of the rules governing seating in the press galleries, but also the administration and enforcement of those rules." *McCarthy*, 5 F.4th at 41; *see also Consumers Union*,

20

515 F.2d at 1350-51.  The Court thus reaffirmed that the Clause applies to actions "executing" or "enforcing" the "internal rules of Congress."  *McCarthy*, 5 F.4th at 41 (citation omitted).

As in *McCarthy* and *Consumers Union*, the challenged acts here by the Sergeant at Arms and Chief Administrative Officer constituting the execution of House Resolution 38 are themselves legislative acts pertaining directly to the internal rules and the discipline of Members—matters "[that] the Constitution places within the jurisdiction of [the] House."  *Gravel*, 408 U.S. at 625.

Under a straightforward application of this Court's precedent, Plaintiffs' suit is barred.  In *Consumers Union*, the case most directly on point, a magazine publisher challenged Congressional rules requiring members of the press to apply to gain access to the House and Senate press galleries.  515 F.2d at 1342.  This Court held that, in excluding the plaintiff publisher from the press galleries, the defendants were "enforcing internal rules of Congress validly enacted under authority specifically granted to the Congress and within the scope of authority appropriately delegated by it," and thus had engaged in "legislative" acts.  *Id.* at 1350.  Although not "the legislative process itself," *id.* at 1348, the "execution of internal rules" governing admittance to the press galleries overlooking the House Floor is "identified with"—and protects—"the legislative process," *id.* at 1351. Accordingly, the defendants' actions "were an integral part of [both] the legislative

machinery" and the "'deliberative and communicative processes'" of Congress. *Id.* at 1350 (quoting *Gravel*, 408 U.S. at 625).

Similarly, in *Rangel*, this Court held that the Speech or Debate Clause prohibited a Member's suit against other Members, committee staff, and the Clerk of the House challenging his censure as a violation of House Rules and the Due Process Clause.  785 F.3d at 23-25.  Relying on the Discipline Clause, this Court reasoned that Congressional discipline is "a 'legislative' matter that 'the Constitution places within the jurisdiction of [the] House.'"  *Id.* at 23 (quoting *Gravel*, 408 U.S. at 625).

 Most recently, this Court held in *McCarthy* that the Speech or Debate Clause precluded a constitutional challenge to a House Resolution enabling Members unable to attend proceedings in person to vote remotely by proxy.  5 F.4th at 36-37.  The *McCarthy* Court reaffirmed *Consumers Union*, noting that "the executing actions themselves constitute[d] legislative acts" and thus were shielded from judicial review.  *Id.* at 41.

Here, the administration and enforcement of an internal House Resolution governing Member discipline for conduct in the Hall of the House—adopted by the full House pursuant to its specific constitutional authority—are plainly legislative acts absolutely protected by the Clause.

Plaintiffs' efforts to distinguish *Consumers Union* fail. *First*, Plaintiffs note (Appellants' Br. 49 (June 15, 2022) (hereinafter "Br.")) that the present case involves allegations of "constitutional limitations." But *Consumers Union* did as well: the plaintiff there alleged a denial of equal protection and due process, and asserted (as do Plaintiffs here) that the rule in question violated the First Amendment. *See* 515 F.2d at 1342.

This Court's recent decision in *McCarthy* also compels rejection of Plaintiffs' argument; there, the plaintiff House Members asserted that the order allowing remote voting by proxy recorded in the Hall of House directly violated various constitutional provisions; this Court nevertheless held that the suit was barred by Speech or Debate Clause immunity. 5 F.4th at 38-41.

 *Second*, Plaintiffs cite (Br. 50-51) *Barker v. Conroy*, in which this Court observed that, in *Consumers Union*, "because the Association's denial of the organization's application involved 'regulation of the very atmosphere in which *lawmaking deliberations* occur,' the Speech or Debate Clause barred us from hearing the suit." *Barker*, 921 F.3d 1118, 1128 (D.C. Cir. 2019) (quoting *Walker v. Jones*, 733 F.2d 923, 930 (D.C. Cir. 1984)) (emphasis added in *Barker*). But the mask rule at issue here quite literally addressed the "very atmosphere" in which such deliberations occur, amidst reasonable concerns that Members could become infected by a deadly airborne virus. Given that the Speech or Debate Clause

23

protects against challenges to regulations that govern access to the House *press galleries*, it surely also protects against challenges to regulations that govern access to the House *Chamber*.

The factual contrast between the present case and *Barker* is instructive.  In *Barker*, this Court rejected a Speech or Debate Clause defense to a lawsuit by an atheist whom the House Chaplain declined to invite to deliver a secular invocation. *See Barker*, 921 F.3d at 1121.  The Court distinguished *Consumers Union* by noting that "any rules pertaining to the opening prayer—an event that occurs at the very beginning of the legislative session before any deliberating whatsoever— could not similarly be said to regulate 'the very atmosphere in which lawmaking deliberations occur.'"  *Barker*, 921 F.3d at 1128 (quoting *Walker*, 733 F.2d at 930). This distinction is decisive: whereas the opening prayer ends before deliberations begin, the action that House Resolution 38 regulated—the use of precautionary measures in the House Chamber to reduce the risk of COVID-19 transmission— pervaded the entirety of House deliberations.

Plaintiffs note (Br. 50) that the *Barker* Court remarked that the rules at issue in *Consumers Union* were designed to preserve legislators' independence, a consideration they contend is not at issue here.  *See Barker*, 921 F.3d at 1128.  But that paragraph in *Consumers Union* indicated only that "[t]he manner of assuring independence of those accredited from such groups or interests is for the Congress

24

to determine as a matter of constitutional power," 515 F.2d at 1347. It did not remotely suggest that this is the *only* goal in furtherance of which Congress can exercise its rulemaking power and enjoy the protection of the Speech or Debate Clause.

Furthermore, as the district court here noted, the Speech or Debate Clause exists "to protect lawmakers' influence from *outside* influences" more generally— "even from the judiciary." JA148. This case, the district court concluded, "directly implicates the traditional concerns underlying the Speech or Debate Clause regarding the potential harms of judicial intrusion into legislative acts." *Id.*

*Third*, Plaintiffs claim (Br. 49) that "mask enforcement and payroll deductions" are not protected by the Speech or Debate Clause. But, as a matter of law, the question is not whether these activities *per se* are covered by the Clause, but whether these functions are protected to the extent that they are in furtherance of this specific House resolution. The answer is clearly yes. As this Court recently wrote:

> The salient distinction under the Speech or Debate Clause is not between enacting legislation and executing it. The pivotal distinction instead is between legislative acts and non-legislative acts. So in *Consumers Union*, the Clause encompassed not just the promulgation of the rules governing seating in the press galleries, but also the administration and enforcement of those rules.

25

*McCarthy*, 5 F.4th at 41.  Plaintiffs here challenge Defendants' "administration and enforcement" of House Resolution 38.  Their challenge is therefore foreclosed by the Speech or Debate Clause.

*Fourth*, Plaintiffs point (Br. 52-54) to three Supreme Court cases to support their position: *Kilbourn v. Thompson*, 103 U.S. 168 (1880), *Dombrowski v. Eastland*, 387 U.S. 82 (1967), and *Powell v. McCormack*, 395 U.S. 486 (1969).  But the Supreme Court's analysis of those cases in *Gravel* provides no support for Plaintiffs' attempt to distinguish *Consumers Union*.  As this Court recognized in *McCarthy*, these three rulings are "not to the contrary" of the analysis in *Consumers Union*, because "[a]s the Supreme Court has explained in specific reference to those three decisions, they 'do not hold that persons … are beyond the protection of the Clause when they perform or aid in the performance of legislative acts.'"  *McCarthy*, 5 F.4th at 41 (quoting *Gravel*, 408 U.S. at 618).

*Fifth*, Plaintiffs cite (Br. 54-55) two cases, *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006), and *Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984), in which this Court declined to recognize Speech or Debate Clause immunity for Members sued for personnel actions (for example, *Walker* involved employment claims of a food service employee).  But those cases are inapposite.

Unlike here, those decisions involved personnel decisions far afield from core Speech or Debate Clause concerns.  Indeed, *Walker* expressly distinguished

26

*Consumers Union*, which "involved, as Walker's discharge surely does not, regulation of the very atmosphere in which lawmaking deliberations occur." *Walker*, 733 F.2d at 930.  As noted above, *see supra* at 23-24, the rule in this case literally regulated "the very atmosphere in which lawmaking deliberations occur," by reducing the spread of a deadly airborne virus in the House Chamber.  *Walker*, 733 F.2d at 930 (noting that in *Consumers Union* "the arrangements in question were intended to shield members of Congress").

*Finally*, Plaintiffs' reliance (Br. 44-46) on *Ballin*—which is not a Speech or Debate Clause case—is misplaced.  In *Consumers Union* itself, the losing plaintiff "relied primarily" on that case, 515 F.2d at 1348 n.13, yet this Court concluded that the Speech or Debate Clause barred the action, *id.* at 1348-51.[14]  Plaintiffs' reading of *Ballin* to require judicial review where "its rules ignore constitutional restraints or fundamental rights" (Br. 44) (quoting *Ballin*, 144 U.S. at 5) (alteration omitted) conflicts not only with *Consumers Union* but with multiple other precedents of this Court.

---

[14] Even if *Ballin* did control here, Plaintiffs would not prevail.  As discussed below, *see infra* at 29-54, the district court here correctly held that the House did not "by its rules ignore constitutional restraints or violate fundamental rights." *Ballin*, 144 U.S. at 5.  Nor can it be said that in this case there is no "reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained."  *Id.* at 5.

In *Rangel*, this Court noted that "[a]n act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution. Such is the nature of absolute immunity, which is—in a word—absolute." 785 F.3d at 24 (citations omitted). Thus, the *Rangel* Court held that the Speech or Debate Clause prohibited a Member's suit against other Members, committee staff, and the Clerk of the House challenging his censure as a violation of House Rules and the Due Process Clause. *Id.* at 23-25. Relying on the Discipline Clause, this Court reasoned that Congressional discipline is "a 'legislative' matter that 'the Constitution places within the jurisdiction of [the] House.'" *Id.* at 23 (quoting *Gravel*, 408 U.S. at 625).[15]

For the same reason, the district court erred when, in a footnote near the end of its Speech or Debate Clause discussion, it concluded that it must assess

---

[15] The grab-bag of additional cases that Plaintiffs cite (Br. 45-46) does not avail them. *Yellin v. United States*, 374 U.S. 109 (1963), and *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995), are criminal cases, and do not implicate the Speech or Debate Clause concerns involved when a plaintiff challenges Congressional action. *Boehner v. Anderson*, 30 F.3d 156 (D.C. Cir. 1994) was "a straightforward challenge to the constitutionality of a public law that directly affects his private interest as a government employee," raising "no dispute properly within the domain of the legislative branch." *Id.* at 160. *Kennedy v. Sampson*, 511 F.2d 430 (D.C. Cir. 1974), involved a dispute between a Senator and the Executive Branch regarding the scope of the so-called "pocket veto." And in both *Moore v. U.S. House of Reps.*, 733 F.2d 946, 954 n.39 (D.C. Cir. 1984), and *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1171-72 (D.C. Cir. 1982), this Court expressly refrained from deciding whether the suits were barred by the Speech or Debate Clause.

Plaintiffs' constitutional challenges to determine whether Defendants' actions were shielded from review by the Speech or Debate Clause. JA153 n.14. Undertaking such an assessment vitiates the protections of the Clause and squarely conflicts with the multiple cases—such as *Consumers' Union*, *Rangel*, and *McCarthy*—in which this Court dismissed cases on Speech or Debate grounds without inquiring into the constitutional violations alleged by plaintiffs. *See, e.g.*, *Rangel*, 785 F.3d at 25 ("Rangel contends that the defendants' conduct cannot be 'legislative' because it was, in his view, *illegal.* This 'familiar' argument—made in almost every Speech or Debate Clause case—has been rejected time and again." (quoting *Eastland*, 421 U.S. at 510) (emphasis in original)). If a court had to evaluate the merits of a lawsuit before determining whether Speech or Debate immunity applied, the Clause would not provide much protection at all, contrary to the clear intention of the Framers of the Constitution.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM

Although the district court incorrectly held that it needed to examine Plaintiffs' constitutional claims to determine whether Defendants' actions warrant Speech or Debate protection, the court correctly concluded that all of those claims are meritless. If the proper Speech or Debate Clause approach is followed, this Court does not need to reach these other issues.

### A.    The Resolution Does Not Violate the Twenty-Seventh Amendment

Plaintiffs allege that enforcement of House Resolution 38 violates the Twenty-Seventh Amendment, which provides: "No law, varying the compensation for the services of the Senators and Representatives, shall take effect, until an election of Representatives shall have intervened."  U.S. Const., Amend. XXVII. This amendment was intended to augment the Ascertainment Clause, which provides that "Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States."  U.S. Const., Art. I, § 6, cl. 1; *see* Richard B. Bernstein, *The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 Fordham L. Rev. 497, 502 (1992).  Although the Amendment was introduced in Congress by James Madison in 1789, it was not ratified by the requisite three-fourths of the States until 1992.  *See* Bernstein, *supra*, at 539.  From the First Congress through the Amendment's ratification, proponents were animated by concerns about the actual or seeming impropriety of having Congress determine its own pay.  *See id.* at 522-42.

### 1.    The Plain Language of the Twenty-Seventh Amendment Does Not Cover House Resolution 38

By its plain text, the Twenty-Seventh Amendment does not apply to House Resolution 38 for two reasons: (1) the fines at issue do not vary Member

"compensation"; and (2) House Resolution 38 is not a "law" within the meaning of that amendment.

*First*, a fine imposed pursuant to House Resolution 38 does not "vary the compensation for the services" of Members within the meaning of the Twenty-Seventh Amendment. A fine is a "pecuniary criminal punishment or civil penalty payable to the public treasury." *Fine*, Black's Law Dictionary (11th ed. 2019).

In this case, the fine at issue was a penalty for the failure to comply with a requirement to wear a mask in the Hall of the House. By contrast, "compensation" has long been understood to mean payment for services rendered. *See, e.g.*, *Compensation*, Black's Law Dictionary (11th ed. 2019) ("Remuneration and other benefits received in return for services rendered; esp., salary or wages."); *Compensation*, Oxford English Dictionary (2d ed. 1989) ("salary or wages … payment for services rendered"); 2 The Records of the Federal Convention of 1787 44-45 (Max Farrand ed., 1911) (using "salaries" and "compensation" interchangeably). As the district court concluded, Founding-era dictionaries essentially defined "compensation" as "something equivalent" to their services rendered. *See* JA155-56.

Relatedly, "service" is "[t]he official work or duty that one is required to perform." *Service*, Black's Law Dictionary (11th ed. 2019); *see also Service*, A

31

Dictionary of the English Language, Samuel Johnson (1785) (defining "service" as "[e]mployment; business").

A fine imposed pursuant to House Resolution 38 against a particular House Member for violating binding House rules does not change that Member's "compensation" for his/her "services" within the meaning of the Twenty-Seventh Amendment. House Resolution 38 affects a Member's finances only conditionally: a Member is fined and the fine is deducted from the Member's salary only for failing to wear a mask in the Hall of the House in violation of the applicable House rule. *See* H. Res. 38; *see also* 2 U.S.C. § 4523 (providing specific authorization for such salary deductions since 1934).

This reading accords with how these terms are used in everyday life. If a professional athlete who earns $10 million per year is fined $50,000 for violating a team rule, we do not say that his "compensation" has been reduced to $9,950,000. His compensation for his services remains the same; his punishment for an infraction, which was wholly separate from the services for which he was compensated, is another matter entirely.

The Supreme Court's decision in *United States v. Hatter*, 532 U.S. 557 (2001), is not to the contrary. In that case, the Court held that the Judicial Compensation Clause, U.S. Const., Art. III, § 1, rendered unconstitutional a law that increased tax burdens for a group consisting almost exclusively of then-sitting

federal judges. *See* 532 U.S. at 572-78. Were it otherwise, the Court concluded,

Congress could conduct an end-run around the Judicial Compensation Clause

under the guise of taxation. *See id.* The logic of *Hatter* suggests that Congress

could not, consistent with the Twenty-Seventh Amendment, impose a tax, or create

an exemption from a tax, that applied only to Members of Congress as a class.

This would, in essence, "vary[]" Members' "compensation for their services" and

thus implicate the Amendment.

But a fine is entirely distinct from a tax. The fines under House Resolution

38 were assessed against an individual, not against Members of Congress as a

class. Moreover, the fines imposed here did not target Members of Congress "for

their services," but rather for a violation of a rule of Congress. A Member who

wished to avoid the fine could do so simply by wearing a mask in the Hall of the

House—as nearly every Member in fact did. Furthermore, the Judicial

Compensation Clause has a different purpose than the Twenty-Seventh

Amendment: to protect "judicial independence" from Congress. *See Hatter*, 532

U.S. at 571. The same purpose does not underlie the Twenty-Seventh

Amendment: it would be illogical to speak of Congress preserving its

independence from itself.

Plaintiffs' novel reading of "compensation" would conflict with other

provisions of the Constitution. The word "compensation" also appears in the

Ascertainment Clause, which provides that "The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States." U.S. Const., Art. I, § 6, cl. 1.[16] As this Court has held, the phrase "ascertained by Law" refers to laws enacted through the process of bicameralism and presentment. *See Humphrey v. Baker*, 848 F.2d 211, 214-15 (D.C. Cir. 1988) (holding that statutory delegation of authority to President to set Congressional salaries, subject to Congressional disapproval, did not violate Ascertainment Clause where "the procedures eventuating in the specific figures" were set by legislation).

Thus, *if* Plaintiffs are correct that a fine reduces "compensation," as that term is used in the Constitution, then the Ascertainment Clause would prevent the assessment of any fine without a statute approved by both the House and the Senate, followed by presentment to the President. Indeed, Plaintiffs argue as much (Br. 33) in support of their claim that their fines violate the Ascertainment Clause and the Presentment Clause, U.S. Const., Art. I, § 7, cl. 2. However, this argument runs headlong into the Discipline Clause, which provides that "*[e]ach House may … punish its Members for disorderly Behaviour … .*" U.S. Const., Art. I, § 5,

---

[16] Plaintiffs do not suggest that the word "compensation" in the Twenty-Seventh Amendment carries a different meaning than the same word, applying to the same people, in the Ascertainment Clause. Rather, they emphasize (Br. 16-17) that the same concerns animated the drafting of both provisions.

cl. 2 (emphasis added); *see also Kilbourn*, 103 U.S. at 189-90 ("[T]he Constitution expressly empowers *each House* to punish its own members for disorderly behavior," even including "imprisonment … for refusal to obey some rule on that subject made by the House for the preservation of order." (emphasis added)). Thus, because the Discipline Clause allows fines to be imposed by each house acting alone, whereas *the Ascertainment Clause requires "compensation" to be determined by both houses*, such fines cannot be considered to affect Members' "compensation" without rendering irreconcilable the Discipline Clause and the Ascertainment Clause. The most logical way to give effect to both clauses is to read "compensation" as unaffected by disciplinary fines. *See Kilbourn*, 103 U.S. at 189-90 (noting, in an action brought for false imprisonment, that each House also has the power to impose fines).

    *Second*, a House rule is not a "law" within the meaning of the Twenty-Seventh Amendment. Plaintiffs note other contexts in which the term "law" has been interpreted broadly (Br. 22-24), but the question is whether "law" has such a meaning *in the Twenty-Seventh Amendment*. It does not.[17]

---

[17] Plaintiffs themselves concede that the Constitution uses "law" differently depending upon context. *See* Br. 33 ("There is no doubt here that the measures in question – passed by only the House – are not 'Laws' within the meaning of Article I, Section 7, Clause 2.").

In *Boehner v. Anderson*, 30 F.3d 156 (D.C. Cir. 1994), this Court held that, for purposes of the Twenty-Seventh Amendment, a "law" requires passage by both chambers of Congress and is either signed by the President or takes effect when Congress overrides the President's veto. Therefore, House Resolution 38—which was adopted by the House alone—not via bicameralism and presentment—is not a "law" encompassed by the Amendment.

The *Boehner* Court held that a provision setting automatic annual cost of living adjustments did not violate the Twenty-Seventh Amendment because these annual adjustments were not laws. 30 F.3d at 161. By contrast, the Ethics Reform Act "became a law" within the meaning of the Twenty-Seventh Amendment "when, the bill having passed both Houses and been presented to President Bush, he signed it into law." *Id.* The annual adjustment provision did not violate the Twenty-Seventh Amendment because the adjustments were not new "laws" within the meaning of that amendment; only the original statute—passed by both chambers of Congress and signed by the President in 1989—was the relevant law. *See id.*

Consistent with the reasoning in *Boehner*, there is no "law" at issue in this case either to which the Twenty-Seventh Amendment would apply. That amendment establishes an additional procedural requirement for laws varying Member compensation (*i.e.*, *when* such a law can take effect), and thus the word

36

"law" logically takes on the procedural meaning contemplated in Article I. *See* GianCarlo Canaparo & Paul J. Larkin, Jr., *The Twenty-Seventh Amendment: Meaning and Application*, Harv. J.L. & Pub. Pol'y, Sept. 2, 2021, at 9-11.[18] House Resolution 38 is simply an internal resolution adopted by a single chamber of Congress, not the product of the bicameralism-and-presentment process set out in the Constitution. *See Boehner*, 30 F.3d at 161. The Twenty-Seventh Amendment, therefore, does not apply.

Furthermore, as noted above, *see supra* at 34, there is no question that the Ascertainment Clause, which the Twenty-Seventh Amendment was intended to modify, *see* Bernstein, *supra*, at 502, refers to laws enacted through the process of bicameralism and presentment when it provides that Congressional compensation shall be "ascertained by law." *See Humphrey*, 848 F.2d at 215; *see also* Canaparo & Larkin, *supra*, at 9-11. Thus, the identical term "law" in the Twenty-Seventh Amendment, introduced by James Madison in the First Congress as a supplement to the Ascertainment Clause, should be given the same meaning.[19]

---

[18] *Available at* https://perma.cc/L8KA-77SA.

[19] Plaintiffs suggest in a footnote (Br. 32 n.25) that the Ascertainment Clause, by capitalizing "law" where the Twenty-Seventh Amendment does not, "refers expressly to the passage of a statute." Plaintiffs offer no support for this assertion, nor do they note that "law" is one of dozens of nouns that are capitalized wherever they appear in the original Constitution, but are never capitalized in the amendments. Other such nouns include account, affirmation, age, aid,

Moreover, Plaintiffs themselves doomed their own argument by noting in their Complaint that "H. Res. 8 and H. Res. 38 are not a 'Law' under the Constitution, because they have not undergone the process of passage in both Houses of Congress and presentment to the President."  JA032; *see also* JA015 ("a house resolution … does not carry the weight of 'Law.'").

### 2. *The Twenty-Seventh Amendment's History and Purpose Confirm That House Resolution 38 Does Not Violate the Amendment*

This Court has recognized that, "[a]ccording to Madison, and to all the ratifying states that stated their understanding, the purpose of the amendment is to ensure that a congressional pay increase 'cannot be for the particular benefit of those who are concerned with determining the value of the service.'"  *Boehner*, 30 F.3d at 159 (quoting James Madison, Speech in the House of Representatives (June 8, 1789), *in* The Congressional Register, June 8, 1789, *reprinted in Creating the Bill of Rights: The Documentary Record from the First Federal Congress* 84

---

appointments, authority, ballot, branch, case, cases, census, certificates, choice, citizens, claim, claims, comfort, compensation, consent, conventions, crime, danger, death, debts, department, departments, disability, duties, effect, election, enemies, equity, executive, fact, forces, immunities, importation, inability, indictment, inhabitant, jurisdiction, land, laws, legislation, legislatures, life, majority, manner, member, members, numbers, oath, obligation, office, officer, officers, party, payment, peace, people, persons, place, power, powers, presence, privileges, property, proportion, punishment, purpose, purposes, qualifications, ratification, rebellion, representation, resignation, right, rules, seat, service, services, session, speech, tax, taxes, term, trial, use, value, vote, votes, witnesses, writs, year, and years.

(Helen E. Veit et al., eds., 1991)).  In other words, the Twenty-Seventh Amendment was enacted to address seeming and actual impropriety that may exist when a group of individuals sets its own pay.  But there is obviously no impropriety—seeming or actual—in fining an individual who defies a House rule.

Plaintiffs suggest (Br. 13-20) that the Amendment may also have been motivated by concerns about *reductions* in salary.  They argue that the Amendment may have been driven in part by concerns that reductions in pay—perhaps enacted to gain popularity with constituents—could "exclude those of modest means from public service."  Br. 19.  Whether or not Plaintiffs are correct, that concern is irrelevant here.  The fine at issue was deducted from a Member's paycheck only if the Member failed to follow a rule of conduct adopted by the entire House in order to protect the Members and House employees against the unchecked spread of a deadly disease.

Plaintiffs offer no reason to conclude that the enactment of the Twenty-Seventh Amendment acted as a back-door restriction on the Discipline Clause, by depriving Congress of the ability to impose fines upon Members and have those fines go into effect in a timely fashion.  If the Twenty-Seventh Amendment had been intended to limit the Discipline Clause, which had long been understood to allow the imposition of fines, one would expect to find some evidence of such intent.  But Plaintiffs provide none.

39

Plaintiffs' conspiratorial insinuation that "what underlie[s] this case" is "[t]he manipulation of salary by the House Democratic Majority to deprive Republican Members, and only Republican Members, of their political independence" is nonsense.  Br. 19.  Not only is this impossible given the mechanics of the rule, but it is demonstrably false.  All but twelve of the 211 Republican Members—over 94%—have managed to avoid having fines imposed and upheld against them under House Resolution 38.[20]

Just five years ago, the House adopted a resolution—much like House Resolution 38—that amended the House Rules to authorize the Sergeant at Arms to "impose a fine" against any Member who violated a policy prohibiting recordings in the Chamber, and to authorize the Chief Administrative Officer to "deduct the amount of any fine" from a Member's "net salary."  H. Res. 5, 115th Cong. § (2)(a)(1) (2017).  If House Resolution 38 is unconstitutional, that resolution would be as well.  However, the only Plaintiff in this case who was a Member at the time voted in favor of adopting it.  *See* 163 Cong. Rec. H7, H26 (daily ed. Jan. 3, 2017) (recording the affirmative vote of Rep. Massie).

---

[20] *See* Press Releases, Committee on Ethics, *available at* https://perma.cc/TL62-KDH9, which lists, *inter alia*, all Members against whom fines have been imposed and upheld under House Resolution 38.

### B.    The Resolution Does Not Violate Section 6 or 7 of Article I of the Constitution

Plaintiffs' argument (Br. 32-33) that their fines violate the Ascertainment Clause and the Presentment Clause also fails.  As discussed above, *see supra* at 31-35, the fines do not reduce Plaintiffs' "compensation."  Plaintiffs fare no better with their argument (Br. 33) that their fines are unconstitutional because they were not assessed by "Congress itself."  Defendants are unaware of *any* fine that "Congress itself" has ever assessed upon a Member; Plaintiffs' argument would invalidate every fine that has ever been issued by either the House or the Senate independently.  As discussed above, *see supra* at 34-35, the Constitution plainly does not require this.

### C.    The Resolution Does Not Violate the Discipline Clause

Plaintiffs argue that willfully disobeying a requirement to wear a mask in the Hall of the House is not "disorderly behavior" and thus is beyond the scope of the Discipline Clause of the Constitution.  Their argument would come as a surprise to the millions of Americans who complied (and, where applicable, still comply) with mask requirements when, *e.g.*, attending proceedings in federal courthouses, traveling by public transit or airplane, or visiting patients in veterans' hospitals, and who would have risked denial of entry or removal, and possible penalties under federal law, had they failed to comply.  As the district court held, the imposition and collection of a fine for refusal to comply with a health requirement

measure mandated by a vote of the House to combat a pandemic "fall[s] squarely within the House's authority to establish its own rules and to discipline its Members for failure to comply with those rules."  JA152.

The Discipline Clause provides: "Each House may … punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member."  U.S. Const., Art. I, § 5, cl. 2.  The Discipline Clause gives both houses of Congress "broad official powers" to address, among other things, "'violations of internal congressional rules'" and "'even purely private conduct by a Member that, in the House's opinion, reflects badly on it as an institution.'"  *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (quoting Josh Chafetz, Democracy's Privileged Few 74, 210 (2007)).  Accordingly, the Discipline Clause "grants expansive authority for each House to discipline and sanction its Members for improper behavior."  *Id.*  As the Supreme Court noted over 140 years ago, "the Constitution expressly empowers each House to punish its own members for disorderly behavior," whether "by fine or imprisonment," including "imprisonment … for refusal to obey some rule on that subject made by the House for the preservation of order."  *Kilbourn*, 103 U.S. at 189-90.

Plaintiffs argue that the phrase "disorderly behavior" in the Discipline Clause "should be given its ordinary meaning as understood at the time of

ratification." Br. 31. But the 1785 dictionary that Plaintiffs cite defines "disorderly" to include "contrary to law." *See id.*; Samuel Johnson, A Dictionary of the English Language (1785). Likewise, the 1991 definition that they proffer defines "disorderly" to include "[c]ontrary to the rules of good order and behavior." Black's Law Dictionary (6th ed. 1991). And the 1828 dictionary cited in Plaintiffs' complaint, *see* JA031 n.25, included "contrary to rules" in its definition of "disorderly." *See Disorderly*, American Dictionary of the English Language, Noah Webster (1828).[21]

Plaintiffs claim that this is "circular logic," in which the reasoner begins with what he or she is trying to end with. Br. 29. It is not. Plaintiffs' real objection is that the dictionaries they cite include definitions that they dislike—because those definitions encompass their behavior. House Resolution 38 is fully consistent with the "expansive authority" granted by the Discipline Clause.

Indeed, the House has in the past imposed far greater fines against Members than the $500 per violation and $2500 for subsequent violations, at issue here. For instance, in 1969, the House fined a Member $25,000—to be withdrawn from the Member's pay—for various offenses, including the misuse of official committee appropriations, payroll, and expenses. *See* Cong. Rsch. Serv., RL31382, Expulsion, Censure, Reprimand, and Fine: Legislative Discipline in the House of

---

[21] A*vailable at* https://perma.cc/JB5C-KWLY.

Representatives 14 (2016).  In 2012, a Member was fined $10,000 in conjunction with her reprimand for misuse of official resources.  *See id.*  And in 2020, a Member was fined $50,000 in conjunction with his reprimand, also for misuse of official resources.[22]

As the Supreme Court has noted, each chamber's discretion in disciplining its members is "almost unbridled" and "there is no established right to review" of such a decision.  *United States v. Brewster*, 408 U.S. 501, 519 (1972).  The Discipline Clause's "right to expel extends to all cases where the offense is such as in the judgment of the [House or S]enate is inconsistent with the trust and duty of a member."  *In re Chapman*, 166 U.S. 661, 669 (1897).  As Justice Story wrote regarding the Rulemaking and Disciplinary Clauses: "No person can doubt the propriety of the provision authorizing each house to determine the rules of its own proceedings. …. But the power to make rules would be nugatory, unless it was coupled with a power to punish for disorderly behaviour, or disobedience to those rules."  2 Joseph Story, *Commentaries on the Constitution of the United States* § 835 (1833).

Imposing a fine for violating a House rule that imposes a minimal burden on Members to protect the health of Members and House Floor staff, and the ability to

---

[22] *See* Comm. on Ethics, *In the Matter of Allegations Related to Representative David Schweikert*, H. Rep. No. 116-465, at 1-3 (2020).

deliberate in the House Chamber in the midst of a pandemic, is thus well within the heartland of the Discipline Clause.

Plaintiffs misconstrue (Br. 30) the district court opinion in *Rangel v. Boehner*, 20 F. Supp. 3d 148 (D.D.C. 2013), *aff'd on other grounds*, 785 F.3d 19 (D.C. Cir. 2015). As Plaintiffs note, that court wrote that "to determine whether the alleged conduct here is beyond the authority of this Court, it is necessary to determine whether members of the House have acted outside of the zone of their discretion under the Discipline Clause." 20 F. Supp. 3d at 171. But, as the court further wrote, the House's discretion under the Discipline Clause "is broad and constrained only by *other* constitutional limits: determining whether the House has acted within its discretion, then, is by nature congruent with determining whether the House has violated *another* provision of the Constitution in the course of disciplining a Member." *Id*. at 172 (emphases added). Unlike in the court's hypothetical of "the House locking a Member in the basement of the Capitol for one year based only on an internal disciplinary vote," *id.* at 171, Plaintiffs here, like the plaintiff in *Rangel*, have "not identified any constitutional provision expressly limiting the House's discretion to discipline" them, *id.* at 173.

**D.    The Resolution Does Not Violate the First Amendment**

Plaintiffs make three First Amendment arguments: (1) that their refusal to wear a mask, leading to their fines, "was done to express symbolic speech,

including as a form of protest against unscientific, governmental mandates directing what people wear," JA033; (2) that the requirement to wear a mask in the Hall of the House constituted "compelled speech," JA033-034; and (3) that the rule was enforced in a "viewpoint discriminatory manner," JA033.  All three arguments fail.

As an initial matter, it bears noting that a vast array of governmental entities imposed mask requirements during the pandemic.  Defendants are unaware of (and Plaintiffs do not cite) any successful First Amendment challenge to such requirements.  Indeed, this Court currently requires that all spectators at oral argument, and all persons in any public area of the courthouse, wear masks.  *See* D.C. Circuit, Notice, Mask Requirements in the Public Areas of the Courthouse and Courtrooms Effective April 4, 2022.[23]  And Plaintiffs would have been unable to attend the District Court's hearing in this case had they not been wearing masks. *See* Standing Order, *In Re: Reinstatement of Mask Requirement for All Individuals in Public and Non-Public Areas of Courthouse*, No. 21-45 (July 30, 2021).

Plaintiffs' claim that they were unconstitutionally punished for not wearing masks—conduct that they believe warrants First Amendment protection as symbolic speech—is mistaken.  "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," courts

---

[23] *Available at* https://perma.cc/EJ2Y-PZXJ.

ask "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (alterations and citation omitted).

If a court answers both questions in the affirmative, it must then ask "whether [the government] has asserted an interest in support of [the punishment of Plaintiffs] that is unrelated to the suppression of expression." *Id.* at 407. If so, then the "relatively lenient," *id.*, standard of *O'Brien* applies. Under that standard,

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377.

Assuming *arguendo* that the message Plaintiffs intended to convey was very likely to be understood by viewers, Plaintiffs cannot pass the *O'Brien* test, which would apply because the House of Representatives has "asserted an interest … unrelated to the suppression of expression"—*i.e.*, combating the spread of COVID-19. *Johnson*, 491 U.S. at 407. As the district court correctly concluded, the Resolution easily meets the *O'Brien* requirements.

47

*First*, for the reasons stated above, *see supra* at 41-45, the Resolution is within the House's constitutional power.  *See* JA164.

*Second*, the Resolution furthered the important and substantial interest of the House in fighting an extremely dangerous pandemic.  As the district court correctly found, "the consensus within the scientific community is clear that masks—and, in particular, well-fitting, protective masks—are effective in slowing the spread of the COVID-19 virus, as demonstrated by the very articles cited by the plaintiffs in their Complaint."  JA167-68.  Furthermore, the Attending Physician repeatedly advised that all individuals wear masks.  *See supra* at 7-9.

*Third*, that interest is plainly unrelated to the suppression of free expression.  As the district court concluded, "the conduct of not wearing a mask in the House Chamber is singled out for proscription, not for the purpose of restricting the plaintiffs' intended messages, but rather because of the importance of requiring safe practices in the midst of a pandemic."  JA165 (internal quotation marks, alterations, and citations omitted).  Plaintiffs provide no basis to challenge that conclusion.  While they allege parenthetically (Br. 38) that "the mandate was only applicable in the Hall of the House so it was not about 'science' but was meant to convey a message," this is both irrelevant and—as noted above, *see supra* at 2— incorrect.

48

*Finally,* any "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. As to the final *O'Brien* element, Plaintiffs retained ample opportunity to criticize the mask requirement even while abiding by it, whether by condemning it in a speech on the House floor or by other means. Indeed, Rep. Massie did just that, tweeting on multiple occasions a photo of himself wearing a mask displaying the message "I'm just wearing this so I don't get fined."[24] On one occasion, Rep. Greene was pictured standing next to him wearing a mask displaying the message "FIRE FAUCI."[25]

Plaintiffs' brief does not even cite *O'Brien*—even though the district court relied on it extensively, *see* JA163-69—much less engage with the test it sets forth. Instead, they essentially argue that the First Amendment allows them to exempt themselves from any rule by making clear that their disobedience constitutes a protest. That is not the law—that would be anarchy.

---

[24] Thomas Massie (@RepThomasMassie), Twitter (Jan. 31, 2021, 8:33 PM), https://perma.cc/QWA4-D69P.

[25] Thomas Massie (@RepThomasMassie), Twitter (Apr. 20, 2021, 4:32 PM), https://perma.cc/KNV8-VETW; *see also* Dennis Romboy, *What's on a Mask? Politicians Send Messages with Face Coverings*, Deseret News, Mar. 10, 2021, https://perma.cc/BJ7W-UCFA (describing Rep. Greene as "[p]erhaps the queen of message masks" and noting that she "has worn an array of face coverings, including ones reading 'Trump Won,' 'Stop the Steal,' 'Censored,' 'Free Speech' and 'End Abortion'").

Whether or not Plaintiffs' violations were "disruptive" or created a "disturbance" (Br. 39) is irrelevant.  Plaintiffs seize upon language in *Texas v. Johnson* noting that no "disturbance" occurred due to Johnson's flag burning, but as the district court here noted, "the Supreme Court considered the existence of a disturbance in its First Amendment analysis in *Johnson* because the government in that case asserted an interest in preventing breaches of the peace. The House has not asserted a similar interest here."  JA170 (internal quotation marks, brackets, and citation omitted).

Plaintiffs' compelled speech argument is equally mistaken.  As a threshold matter, that argument was conceded below, as the district court found, JA161 n.20, and is therefore waived on appeal.  In their opposition to Defendants' motion to dismiss, Plaintiffs' section on compelled speech presented no argument, but rather "copie[d] word-for-word—and without any citation—a discussion of the compelled speech doctrine in the United States Court of Appeals for the Tenth Circuit's decision in *Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013)," *id.*, which involved a challenge to an Oklahoma statute forbidding the covering of an image on state license plates.

On appeal, Plaintiffs once again copy nearly verbatim from *Cressman*;[26] they address the present case with a single sentence: "Again, so too here: the compelled speech here violated the First Amendment and the District Court erred in holding otherwise."  Br. 42.  This Court should, as the district court did below, consider the argument waived.

In any event, Plaintiffs' compelled speech argument is wrong.  The First Amendment does protect persons from being compelled to speak, and in some cases, compelled *conduct* can be an unconstitutional abridgement of the freedom of speech.  *See, e.g.*, *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (resolution compelling students to salute the flag is unconstitutional).  However, the Supreme Court has "rejected the view that 'conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.* ("*FAIR*"), 547 U.S. 47, 65-66 (2006) (quoting *O'Brien*, 391 U.S. at 376).  Rather, the Supreme Court has "extended First Amendment protection only to conduct that is *inherently expressive*."  *Id.* at 66 (emphasis added).

---

[26] Plaintiffs' symbolic-speech argument also relies heavily on *Cressman*, borrowing several paragraphs from the Tenth Circuit's opinion, without citation, while making minimal changes.  *Compare* Br. 35-38, *with Cressman*, 719 F.3d at 1148-50.

Wearing a mask to combat a pandemic spread by an airborne virus is plainly not "inherently expressive." That doing so may reflect a view about the effectiveness of masks at reducing transmission of COVID-19 makes it no more expressive than fastening a seatbelt while driving or staying home when sick. *See Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.").

Plaintiffs' protestations that they are being forced to convey a message with which they disagree does not bring the conduct required by the Resolution within the ambit of the First Amendment. "If combining speech and conduct were enough to create expressive conduct," the Supreme Court has noted, "a regulated party could always transform conduct into 'speech' simply by talking about it." *FAIR*, 547 U.S. at 66. Such a rule would yield absurd results: "if an individual announces that he intends to express his disapproval of the Internal Revenue Service by refusing to pay his income taxes, we would have to … determine whether the Tax Code violates the First Amendment." *Id.*

Plaintiffs also appear to make a half-hearted viewpoint discrimination claim, arguing (Br. 43) that "one viewpoint was favored over another" and that "in a limited public forum, viewpoint discrimination is *ipso facto* unconstitutional." As

52

in their brief in the district court, Plaintiffs do not specify the viewpoint that was disfavored. The district court concluded that, "[b]ecause the plaintiffs have not provided any support for the proposition that they have plausibly alleged a claim of viewpoint discrimination, the Court is without any basis on which to consider the plaintiffs' argument." JA163 n.21. Accordingly, the district court granted the defendants' motion to dismiss Plaintiffs' viewpoint discrimination claim. *See id.*

If Plaintiffs' argument is that the imposition of a mask policy and rule constituted improper viewpoint discrimination, they are mistaken. Simply put, *any* policy or rule that governs the House chamber reflects a viewpoint, and a willing violation represents a contrary view. Such an argument, if accepted, would render the House powerless to govern its own proceedings, in stark contravention of the Rulemaking Clause**.**

Alternatively, Plaintiffs might be raising a selective enforcement claim; their complaint alleges that the rules "have been enforced in a partisan and viewpoint discriminatory manner to prohibit such symbolic speech from members who are not in the majority." JA033. This assertion too fails because, for the reasons discussed above, Plaintiffs' failure to wear a mask is not First Amendment-protected speech. Unlike in a hypothetical case where Members were singled out and punished for wearing masks that displayed statements antagonistic to the House majority, no "viewpoint" is subject to regulation here. An allegation that a

rule is being selectively enforced does not rise to the level of a First Amendment violation when the conduct covered by the rule is itself not a First Amendment issue.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of dismissal entered by the district court.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter
Todd B. Tatelman
Eric R. Columbus
Michelle S. Kallen
Stacie M. Fahsel

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House
Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Defendants-Appellees*

July 22, 2022

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B) because this brief contains 12,148 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Professional Plus 2016 in 14-point Times New Roman type.

*/s/ Douglas N. Letter*
Douglas N. Letter

## CERTIFICATE OF SERVICE

I certify that on July 22, 2022, I filed one copy of the foregoing Brief for Appellees via the CM/ECF system of the United States Court of Appeals for the District of Columbia Circuit, which I understand caused service on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter